UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ROSALINDA APONTE,                              :

               Plaintiff,             :

                                                                         OPINION AND ORDER
      -v.-                                            :         22 Civ. 1240 (GWG)

KILOLO KIJAKAZI,                               :

               Defendant.             :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Plaintiff Rosalinda Aponte brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the February 16, 2021 decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). Both parties have moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).[1] For the reasons that follow, Aponte's motion is denied, and the Commissioner's cross-motion is granted.

I.     BACKGROUND

     A.    Procedural History

      In September 2019, Aponte filed for DIB, alleging that she was disabled due to fibromyalgia, lower back pain, right leg pain, and depression. SSA Admin. Record, filed Aug. 30, 2022 (Docket # 17) ("R."), at 177, 208. On December 10, 2019, Aponte's claim was denied, R. 83, and on April 29, 2020, Aponte's claim was denied again on reconsideration, R. 91.

---

[1] See Plaintiff's Memorandum of Law, filed Oct. 31, 2022 (Docket # 19) ("Aponte Mem."); Memorandum of Law in Opposition to Plaintiff's Motion for Judgment on the Pleadings and in Support of the Commissioner's Cross Motion, filed Dec. 14, 2022 (Docket # 21) ("Comm'r Mem.").

Aponte requested a hearing before an Administrative Law Judge ("ALJ"). R. 172. Aponte testified at a hearing before the ALJ on November 3, 2020, where she was represented by counsel. R. 30, 34. In a decision issued on February 16, 2021, the ALJ found that Aponte was not disabled. R. 15, 25. On December 14, 2021, the Appeals Council denied Aponte's request for appeal. R. 1. On February 14, 2022, Aponte filed the instant action challenging the ALJ's decision. Complaint, filed Feb. 14, 2022 (Docket # 1).

B.  The Hearings Before the ALJ

Aponte testified telephonically at the hearing before the ALJ with the assistance of a Spanish interpreter. See R. 33, 37. Also testifying at the hearing was Vocational Expert ("VE") Whitney Eng. R. 32.

Aponte testified that she was 48 years old at the time of the hearing, R. 37; that she had not completed tenth grade; and she had no GED, R. 38. She was not working, R. 39, and had not worked since 2018, R. 40. Her last job had involved assembling tools and machines, R. 40, and her previous jobs included packing fruit and organizing shelves, R. 40-41.

Aponte had seen a therapist for mental health concerns. R. 42-43. She also had "pain in [her] bones, because of lumbar pain, [and] pain in [her] lower back" that made it "difficult for [her] to stand in one place." R. 44. She could sit for thirty minutes at a time. R. 44-45. She could lift up to the weight of a gallon of milk. R. 45. She "feel[s] drowsy and dizzy for most of the day" due to her medications, and that "pain makes it impossible for [her] to work." R. 45. Her ability to work was also impaired by her "depression, . . . anxiety, . . . [and] physical exhaustion." R. 46.

The VE testified that Aponte's past work could be classified as hand packager, fruit packer, and assembler, which fell into the light or medium work categories. R. 47. She testified

that a hypothetical person of the same age, education, and experience as Aponte would not be able to perform Aponte's past work if limited to a "light exertional level" with the restrictions "that they [could] lift and/or or carry 20 pounds occasionally, 10 pounds frequently[,] . . . [could] sit for six hours in an eight-hour workday, stand or walk for six hours in an eight-hour workday[,] . . . [could] occasionally climb ramps and stairs, but should never climb ladders and scaffolds[,] . . . [could] occasionally balance and stoop[,] . . . should never kneel, crouch or crawl[,] . . . should avoid reaching overhead, but [could] frequently reach, push and pull in all other directions, up to the limits of light work," and "should work in a low-stress environment, defined as occasional use of judgment, occasional decision making, and occasional changes in the work setting," while able to "perform simple and routine tasks." R. 47-48. The VE testified that such a person would, however, be able to perform the light work of retail marker, plastic products assembler, or ticket taker, all of which were available in the national economy. R. 48.

The VE testified that only the job of ticket taker would be eliminated if such a person was only able "to have contact with supervisors, co-workers, and the general public on an occasional basis." R. 50. If the individual could only have "less than occasional" contact with others, the VE testified that the person would be precluded from all work. Id. The VE testified that the same individual could not perform Aponte's past work if limited to sedentary exertion. R. 49. The VE testified that an individual limited to such conditions could, however, perform the jobs of escort vehicle driver, addressing clerk, or document preparer. Id.

      C.     The Medical Evidence

Both Aponte and the Commissioner have provided detailed summaries of the medical evidence. See Aponte Mem. at 3-8; Comm'r Mem. at 2-9. The Court directed the parties to specify any objections they had to the opposing party's summary of the record. See Scheduling

Order, dated June 1, 2022 (Docket # 16).  Neither party has done so.  Accordingly, we adopt the parties' summaries of the medical evidence as accurate and complete for the purposes of the issues raised in this suit.  We discuss the medical evidence pertinent to the adjudication of the instant case in Section III below.

> D. <u>The ALJ's Decision</u>

The ALJ denied Aponte's application on February 16, 2021, determining that Aponte "ha[d] not been under a disability within the meaning of the Social Security Act from January 1, 2019, through the date of [the] decision."  R. 16, 25.

Following the five-step test set forth in the Social Security Administration ("SSA") regulations, the ALJ found that Aponte "[would] meet[] the insured status requirements of the Social Security Act through December 31, 2023," and "ha[d] not engaged in substantial gainful activity since January 1, 2019, the alleged onset date."  R. 17.  At step two, the ALJ found that Aponte had the "severe impairments" of "obesity, fibromyalgia, degenerative disc disease, degenerative joint disease, rotator cuff impingement syndrome, patellofemoral arthritis, anxiety disorder, and depressive disorder."  R. 17.  At step three, the ALJ found that Aponte "[did] not have an impairment or combination of impairments that me[t] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  R. 18.  The ALJ found that "[w]hile the claimant may have difficulties in performing highly complex work tasks, she should be able to perform unskilled work tasks."  R. 19.

Before moving on to step four, the ALJ assessed Aponte's residual functional capacity ("RFC") for the relevant period.  R. 20.  The ALJ found that Aponte had the capacity "to perform light work as defined in 20 CFR 404.1567(b) in that [she could] lift and or carry 20 pounds occasionally and 10 pounds frequently[,] . . . [could] sit for six hours in an eight-hour

4

workday, stand and or walk for six hours in an eight hour workday[,] . . . [could] occasionally climb ramps and stairs but should never climb ladders and scaffolds[,] . . . [could] occasionally balance and stoop[,] . . . should never kneel, crouch and crawl[,] . . . should avoid reaching overhead but [could] frequently reach, push and pull in all other directions up to the limits of light work[,] . . . should work in a low stress environment defined as occasional use of judgment, occasional decision-making, and occasional changes in work setting[,]" and could "perform simple and routine tasks."  R. 20.

At step four, the ALJ found that Aponte was "unable to perform any past relevant work" based on the testimony of the VE.  R. 23-24.  At step five, the ALJ found that, "considering [her] age, education, work experience, and residual functional capacity," Aponte was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  R. 25.  The ALJ determined that "[a] finding of 'not disabled' [was] therefore appropriate under the framework of the [SSA]."  Id.  Thus, he ruled that Aponte "ha[d] not been under a disability, as defined in the Social Security Act, from January 1, 2019, through the date of [the] decision."  Id.

II.     LEGAL STANDARD

    A.     Scope of Judicial Review

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (punctuation omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

5

Substantial evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (punctuation omitted) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008). "It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (punctuation omitted). "[T]he threshold for such evidentiary sufficiency is not high." Id.

As such, it is not a reviewing court's function "to determine de novo whether [a claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (punctuation omitted); accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012), cert. denied, 570 U.S. 919 (2013). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (punctuation omitted). In other words, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)). The Second Circuit has held that "[t]he substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original, punctuation omitted). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d at 454 (punctuation omitted).

6

B.      Standard Governing Evaluation of Disability Claims by the Agency

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see id. § 1382c(a)(3)(A).  A person will be found to be disabled only if it is determined that her "impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Regulations issued pursuant to the Social Security Act set forth a five-step process that the Commissioner must use in evaluating disability claims. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Burgess, 537 F.3d at 120 (describing the five-step process).  First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. 404.1520(a)(4)(i), 416.920(a)(4)(i).  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly

7

limits" the claimant's "physical or mental ability to do basic work activities." Id. §§ 404.1520(c), 416.920(c). Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or is equivalent to one of the impairments listed, the claimant must be found to be disabled regardless of her age, education, or work experience. See id. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). Fourth, the Commissioner must determine if the claimant is able to perform past relevant work, see id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); if not, the Commissioner must at the fifth step decide if the claimant's residual functional capacity, in addition to her age, education, and work experience, permits the claimant to do other work, id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot perform other work, she will be deemed disabled. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The claimant bears the burden of proof on all steps save the final one — that is, on all steps aside from proving that there is other work the claimant can perform. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

III.   DISCUSSION

    A.   Substantial Evidence

Aponte argues that the ALJ's decision is not supported by substantial evidence in light of the ALJ's treatment of the opinion of Dr. Alison Murphy, a consultative psychiatric examiner. Aponte Mem. at 13. Dr. Murphy found that Aponte had either no or "mild" limitations in a number of domains, such as in understanding complex directions, using reason and judgment and taking appropriate precautions. R. 346. She found that Aponte had "moderate" limitations in the following areas: "Interact adequately with supervisors, coworkers, and the public," "Sustain concentration and perform a task at a consistent pace," "Sustain an ordinary routine and regular

8

attendance at work," and "Regulate emotions, control behavior, and maintain well-being."  R. 346.  As to this point, the ALJ found:

> The opinion of consultative examiner Dr. Murphy, who opined that the claimant had mild to moderate mental limitations, is somewhat persuasive.  (Exhibit 4F).  It is generally consistent with the totality of the evidence.  However, the undersigned finds that the moderate limitation[] in social interaction is not supported by the claimant's ability to maintain family relationships and her appropriate interaction with her provide[r]s and at the hearing.

R. 23.

Aponte argues that the ALJ's RFC finding was not supported by substantial evidence insofar as it "failed to include any social interaction limitations" and that such limitations were required in light of Dr. Murphy's opinions.  Aponte Mem. at 12-13.  Aponte argues that the ALJ's decision to omit a social interaction limitation from the RFC "fails the consistency[] and supportability tests," in light of a "longitudinal record showing [Aponte's] complaints regarding her mental health impairments," which should have been reflected in the RFC.  Id. at 14.  Aponte argues that the ALJ's decision "cherry pick[ed]" the record, that the ALJ should have credited the entire opinion of Dr. Murphy, and that the ALJ failed to adequately explain the decision to reject the part of it pertaining to social limitations.  Id.  The Commissioner responds that the RFC is supported by substantial evidence, and disputes that the record supports Aponte's contention.  Comm'r Mem. at 19-20.

In evaluating a medical opinion, whether from a treating source or otherwise, an ALJ must apply the factors set forth in 20 C.F.R. § 404.1520c(c): supportability, consistency, the nature of the relationship between the medical source and the claimant, how specialized the medical source is, and other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. §§ 404.1520c(c), 416.920c(c).  Among these five factors,

9

the "most important" factors are "supportability" and "consistency." Id. §§ 404.1520c(b)(2), 416.920c(b)(2). For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. §§ 404.1520c(c)(1), 416.920c(c)(1). Thus, supportability is an inquiry geared toward assessing how well a medical source supported and explained their opinion. As for consistency, the rules provide that the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. §§ 404.1520c(c)(2), 416.920c(c)(2). Thus, "[c]onsistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record, not just what a medical source had available to them." See Acosta Cuevas v. Comm'r of Soc. Sec., 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021). Regulations make clear that an ALJ must explain how he or she "considered the supportability and consistency factors for a medical source's medical opinions" but is not required to explain the other factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

We find that the ALJ adequately explained her decision to reject Dr. Murphy's proposed limitations on social interaction. Although Aponte argues that the ALJ's decision "lacks sufficient explanation[,] requiring remand[,]" Aponte Mem. at 14, the ALJ in fact gave an adequate explanation for her reasons for rejecting the limitation, see R. 23. As Aponte acknowledges, see Aponte Mem. at 15, an ALJ is "entitled to disregard favorable portions of [medical] opinions," as long as the ALJ gives "logical reasons to support [her] decision to do so." Long v. Berryhill, 2019 WL 1433077, at *4 (E.D.N.Y. Mar. 29, 2019); accord Guaylupo v.

10

Comm'r of Soc. Sec., 2022 WL 4358148, at *8 (S.D.N.Y. Aug. 31, 2022). The ALJ's reasons for rejecting an opinion must be "adequately explained[,] such that there is 'an accurate and logical bridge from the evidence to [her] conclusion." Guaylupo, 2022 WL 4358148, at *8 (quoting Long, 2019 WL 1433077, at *3). Here, the ALJ found that although Dr. Murphy's opinion was "generally consistent with the totality of the evidence," her opinion recommending "moderate limitations in social interaction" was "not supported by the claimant's ability to maintain family relationships and her appropriate interaction with her provide[r]s and at the hearing." R. 23. This finding identifies the evidence that contradicted Dr. Murphy's opinion, and we view the inference that a person who can maintain "appropriate" interactions with family, healthcare providers, and hearing participants will also likely be able to interact with others in a work environment as "accurate and logical." Guaylupo, 2022 WL 4358148, at *8.

Aponte also argues that in rejecting the proposed social interaction limitation, the ALJ "acted as an expert medical witness and weighed her opinion over that of Dr. Murphy." Aponte Mem. at 16. We disagree. An ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole," Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (citing Richardson, 402 U.S. at 399), and "[t]here is no requirement that the [ALJ] accept the opinion of a consultative examiner concerning a claimant's limitations" where substantial evidence supports the rejection of that opinion, Pellam v. Astrue, 508 F. App'x 87, 89-90 (2d Cir. 2013). Certainly, "the ALJ cannot arbitrarily substitute [her] own judgment for competent medical opinion." Giddings v. Astrue, 333 F. App'x 649, 652 (2d Cir. 2009) (citation omitted); accord Garces v. Comm'r of Soc. Sec., 2022 WL 4350109, at *1 (2d Cir. Sept. 20, 2022) (summary order). But where the ALJ has "additional context" not available to a

consultative examiner, this may "limit[] the value of [the examiner's] opinion[.]" Rucker v. Kijakazi, 48 F. 4th 86, 94 (2d Cir. 2022).

Here, Aponte attended at least ten practitioner appointments after Dr. Murphy's opinion had been rendered, see R. 398-399, 401-12, 420-25, 431-33, 438-44, 445-47, 450-52, 465-66, 468-69 (appointments between November 2019 and September 2020), at which there were no notations regarding infirmities in her social interactions. There was also a further psychiatric evaluation at which the diagnosis did not reflect any social interaction restrictions. See R. 407-412. Collectively, these appointments supported the ALJ's view that Aponte had "appropriate interaction with her provide[r]s." See R. 23. Although Aponte argues that the "longitudinal record" accords with Dr. Murphy's opinion, Aponte Mem. at 14, Aponte does not point to a single instance outside of Dr. Murphy's examination at which Aponte complained of or was diagnosed with social interaction limitations. Because this "additional context" did not support Dr. Murphy's opinion, we find that the ALJ was entitled to give that part of Dr. Murphy's opinion less weight.

Finally, Aponte argues that because "Dr. Murphy's opinion was supported by and consistent with the evidence in the record," the ALJ was required to "analyze the similarities and differences between the skills and functional capacity required to have family visit her [or] attend a doctor's examination [and] those required to maintain full-time employment." Aponte Mem. at 15-16. Although Aponte points to no law requiring this analysis, we read this as an argument that the ALJ's finding of no limitation on social interaction was not supported by substantial evidence because the ALJ did not perform this analysis. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek, 139 S. Ct. at 1154 (punctuation omitted). Here, in determining the RFC, the ALJ gave persuasive

12

weight to the opinions of Drs. Marks and Bruni, who did not identify any social limitations. R. 23. The ALJ also explicitly factored in the "more restrictive limitations" that were "supported by [Aponte's] testimony at the hearing," R. 23, none of which indicated that Aponte had difficulty with social interaction. There was nothing in Dr. Murphy's report itself that explained why she found the moderate limitation in social interactions. See R. 344-47.

In sum, we find that substantial evidence supported the ALJ's conclusion. Although Aponte suggests that Dr. Murphy's opinion should have been sufficient for the ALJ to render an RFC finding that included social limitations, Aponte Mem. at 15-16, where an ALJ's decision is supported by substantial evidence, it must be upheld "even if substantial evidence supporting the claimant's position also exists." Johnson, 563 F. Supp. 2d at 454 (citing Alston, 904 F.2d at 126).

      B.      Harmless Error

Even if the ALJ had erred in rejecting Dr. Murphy's social limitations opinion, the Commissioner argues that "any failure by the ALJ to incorporate a limitation on social interaction . . . would be harmless error" because the RFC that the ALJ assessed adequately accounts for social limitations, even if they were not explicitly included in the RFC. Comm'r Mem. at 21. Aponte does not respond to this argument.

In a Social Security case, "[t]he Court need not remand the case if the ALJ only committed harmless error, . . . [and] the 'application of the correct legal principles to the record could lead only to the same conclusion.'" Diaz v. Kijakazi, 2022 WL 4352470, at *7 (S.D.N.Y. Sept. 20, 2022) (quoting Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010)); accord Conklin v. Kijakazi, 2023 WL 104829, at *10 (S.D.N.Y. Jan. 5, 2023). Courts have found that this standard applies to an ALJ's RFC determination where error did not alter the eventual RFC. See Ortiz v.

Colvin, 298 F. Supp. 3d 581, 590 (W.D.N.Y. 2018) (failure to incorporate medical opinion into RFC was harmless where it would not change the work available).  By contrast, error is not harmless where, "[h]ad the ALJ incorporated [the limitation] . . . in the RFC, the ALJ would have devised a different RFC determination."  Gonzalez v. Kijakazi, 2022 WL 3330346, at *14 (S.D.N.Y. Aug. 12, 2022) (quoting Kevin R. v. Comm'r of Soc. Sec., 2021 WL 4025534, at *5 (W.D.N.Y. Sept. 3, 2021)).

Aponte's light-work RFC accounts for mild to moderate social limitations.  Because "regulations explain that 'the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people)[,]' . . . unskilled work, by definition, already accounts for limitations in mental functioning, including limitations interacting with others and learning new tasks."  Lee W. v. Comm'r of Soc. Sec., 2021 WL 1600294, at *6 (W.D.N.Y. Apr. 23, 2021) (quoting 20 C.F.R. Pt. 404, Subpt. P, App'x 2 § 202.00(g)); accord Bienvenido J.P. v. Comm'r of Soc. Sec., 2022 WL 901612, at *6 (S.D.N.Y. Mar. 28, 2022) ("Although [the medical opinion] found moderate limitation as to social interaction and emotional self-regulation, the ALJ's conclusion that Plaintiff was limited to simple tasks, with few (if any) workplace changes, adequately accounted for those limitations.").  "[T]he Second Circuit has found that moderate limitations in mental functioning are not inconsistent with an RFC for unskilled work."  Id.  (citing Zabala, 595 F.3d at 410).  Here, the ALJ limited Aponte to unskilled work.  R. 19 ("While the claimant may have difficulties in performing highly complex work tasks, she should be able to perform unskilled work tasks.").  The VE's testimony established that the jobs of retail marker and plastic products assembler would be available to a person who was only able "to have contact with supervisors, co-workers, and the general public

14

on an occasional basis." R. 50.  As such, the RFC adequately accounted for any social interaction limitations, and thus any error relating to such limitations was harmless.

IV. CONCLUSION

For the foregoing reasons, Aponte's motion for judgment on the pleadings (Docket # 18) is denied, and the Commissioner's cross-motion (Docket # 20) is granted.

SO ORDERED.

Dated: New York, New York
September 19, 2023

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge